IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL L. ROGERS,

     Plaintiff,

vs.                                                 No.Civ. 97-0489 BB/WWD

KENNETH S. APFEL,[1]
COMMISSIONER OF SOCIAL SECURITY,

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**
**Proposed Findings**

    1.  This matter comes before the Court upon plaintiff's Motion to Reverse the Decision of the Commissioner, filed March 30, 1998 [10-1].  The Commissioner denied plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  Plaintiff, age 45, alleges a disability which commenced May 13, 1988, due to a musculoskeletal problem.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, finding that Mr. Rogers was able to perform a limited range of sedentary work, and based upon vocational expert ("VE") testimony, concluded that plaintiff was not disabled.  The Appeals Council denied Mr. Rogers' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).  Plaintiff's past relevant work

---

    [1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant, although he was not the appropriate party at the time of the underlying decision.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

was as a carpenter, masonry worker and general contractor, involving from heavy to light work. The ALJ determined that Mr. Rogers could no longer perform this work. Tr. at 35. Mr. Rogers completed high school and has two years of college.

3. In his disability application, plaintiff stated that his back injury (one herniated disk and one "slightly ruptured disk") occurred as a result of excessive use of force by police when he was stopped on suspicion of homicide and an officer knocked his left foot out from under him. Tr. at 104, 347. He sued the Albuquerque Police Department in June 1988, but the case was dismissed in federal court in February 1993. Tr. at 25, 350. Until the incident, he worked as a bricklayer and construction worker. After the incident, he tried working as a construction supervisor, but was unsuccessful because of the amount of walking required. Tr. at 480.

4. He described his pain during treatment visits as right hip pain which extends down the side of his right leg to the ankle, Tr. at 224, 347, and low back pain which persists but does not radiate into the lower extremities. At the second hearing in this case, however, plaintiff stated that he had not had the former type of pain in about 3 years. Tr. at 492, 506. He says the pain is the result of a dislocated hip (also arising out of the confrontation with the police) which gives him arthritis, and two discs in the lower back that do not allow him to sit, stand or walk much.

5. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental

impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A)) & 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

  7. At the first four levels of the evaluation, the claimant must show:  (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.  At the fifth step, the burden shifts to the Commissioner to produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).  The first four steps of the sequential evaluation process are not at issue in this case.

**Procedural History**

  8. The case has followed a somewhat circuitous route in arriving at the point of this appeal.  ALJ Schatz first heard this case in September 1991. Tr. at 400-27.  He issued an unfavorable decision on February 28, 1992, finding that Mr. Rogers had the residual functional capacity for light work. Tr. at 251-58.  The ALJ stated that it was clear that plaintiff suffered from "significant functional limitations associated with his back condition, however, it is also clear that he does receive significant relief from treatment, medication and other modalities and that he is able to engage in a wide range of activities, including work." Tr. at 254.

  9. ALJ Schatz also found that the "prolonged, severe problems" associated with pain

were not corroborated by the evidence from treatment notes, but that pain was quickly alleviated with use of various treatment modalities. Tr. at 256. He noted that Mr. Rogers engaged in some activity as a cabinet maker, that he had the residual functional capacity to do light exertional work and therefore was not disabled.

10. Plaintiff appealed the decision to the federal district court, after which defendant moved for remand to "obtain updated medical evidence from treating sources." Tr. at 18, 266-67. On remand, a hearing was held by ALJ Schatz in August 1993. Tr. at 476-515. As the remand order directed, the hearing took into account both medical testimony from Dr. Thorpe (an orthopedist) and vocational testimony from Anita Miller.

11. ALJ Schatz once again denied benefits, but this time at step one, on the basis that plaintiff was in fact working at substantial gainful activity ("SGA"). Tr. at 361. Examining records from Division of Vocational Rehabilitation ("DVR"), the ALJ found that DVR had assisted in setting up plaintiff in his own wood-carving business. Under 20 C.F.R. §§ 404.1575 and 416.975, ALJ Schatz concluded that Mr. Rogers' work activities were "clearly worth amounts at SGA levels in terms of its value to the business and compared to the salary an owner would pay an employee to do the work he is doing." Tr. at 361.[2]

12. The case was appealed, and then remanded to be heard again a third time in June 1995, this time by ALJ Nail. Tr. at 441-75. This time the case was remanded because it was found that the SGA relied on by ALJ Schatz did not begin until January 1990. Thus, the ALJ's

---

[2] It was found that plaintiff earned about $600.00 a month, above the minimum required for SGA under the regulations. See 20 C.F.R. §§ 404.1574(b)(2) & 416.974(b)(2). The ALJ noted that plaintiff had nearly completed a Santos figure expected to sell for around $3000.00 and that he thought he already had a buyer for the piece.

findings did not account for the period of time before January 1990. Tr. at 373-74.

13. On remand,[3] ALJ Nail held two hearings, the second to supplement the record with testimony of a second VE, Dr. William Kreiger. Tr. at 430-440. In a lengthy decision, ALJ Nail found, contrary to ALJ Schatz' findings, that plaintiff had *not* been engaged in SGA at any time during his insured status period. Tr. at 33, 46. However, he also determined that Mr. Rogers has the residual functional capacity to perform a wide range of sedentary work.

**Discussion**

14. It is from these findings which plaintiff bases allegations of error, contending that the ALJ's denial of benefits at step five was not supported by substantial evidence. Mr. Rogers specifically alleges that the hypothetical posed to the VE was not specific to his limitations with respect to need for frequent postural changes, which were reflected in Dr. Thorpe's functional assessment. He also alleges that the ALJ incorrectly relied on the opinions given by the VE because they did not take these limitations into account. Plaintiff seeks reversal with remand with directions for an award of benefits, rather than for further fact-finding, because the record has been extensively developed over the course of several hearings.

15. Contrary to plaintiff's assertions, I find that the ALJ's step five determination was

---

[3] Plaintiff's date of alleged onset is May 13, 1988. Also, for purposes of disability insurance, Mr. Rogers' date last insured was March 31, 1989. Tr. at 17, 98. Plaintiff's first application for benefits, filed on August 24, 1988, was denied. Tr. at 17, 373-74. A motion to reconsider was denied on December 22, 1988 and the case was not reopened. Tr. at 251. No request was made for a hearing before an ALJ. Tr. at 17, 373-74.

However, in his January 1996 decision, ALJ Nail found that the considerable amount of new medical evidence waived the regulatory requirement of a "request to reopen," thus reopening *sua sponte* the December 22, 1988 determination which denied benefits. Tr. at 21. The ALJ further found that judicial economy would best be served by consolidating and granting *de novo* review of all three applications, including evidence submitted in support of the original August 1988 application.

made after a thorough and extensive consideration of all the medical and subjective evidence available in the record. It would serve no useful purpose here to recite all evidence included and considered in the ALJ's thirty-page decision. Tr. at 17-47. Instead, an abbreviated overview should suffice to underscore the sufficiency of the factual basis behind the decision.

16. ALJ Nail reviewed all the evidence over the seven year period of 1988-1995 relating to treating and consulting physicians, including neurosurgeon, neurologist, radiologist and chiropractor. The objective medical findings revealed: in July 1988, a lumbar strain, with very mild protrusion (Tr. at 23, 201); disc protrusion at the L4/5 level with possible subligamentous herniation below the level of the L5 root associated with moderately severe facet and ligamentous hypertrophy (Tr. at 23, 168); and in October 1990, a midline-to-left-sided herniation of the L4/5 disc (Tr. at 200).

17. In October, 1993, Dr.Thorpe reviewed the medical records of several other treating professionals (Drs. Simons, Greene and Davis). The doctor found mild scoliosis which might account for some restricted motion. His review of x-rays showed degenerative disc disease, with some narrowing of the L4/L5 disc spaces. Tr. at 347-52.

18. The ALJ noted that no exertional limitations were imposed by plaintiff's physicians. Tr. at 34. Dr. Greene viewed plaintiff's losing his civil suit as a "positive inducement" to continue with his woodcarving business or "enter another working environment." Tr. at 352; see Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995) (ALJ may look to see whether doctor has opined that claimant can perform work).

19. The ALJ followed plaintiff's use of different treatment modalities over the period in question and his generally positive response to these treatments. Tr. at 41. Mr. Rogers had

several steroid blocks at University of New Mexico Hospital from November 1990 to March 1991, and then from September to October of that same year. Tr. at 25 (referring to numerous cites from the record).[4] Although plaintiff's affidavit during the time of the first hearing in September 1991 stated that he was taking Norgesic, Valium and Amitriptyline, Tr. at 219, by the time of the second hearing in August 1993, he stated that he was not currently taking any prescription medications. Tr. at 25.

20. The ALJ noted that plaintiff had been treated by Dr. Simons, a chiropractor, on a contingency basis pending the lawsuit against the police department. All told, plaintiff had visited Dr. Simons over a five-year period (until a couple of months after the lawsuit was dismissed) for an average of 3 to 4 day intervals, totaling over 350 visits during this time. Tr. at 25.

21. The ALJ also correctly relied on the various functional assessments performed. Dr. Thorpe's functional assessment, completed as a result of the first remand, was that Mr. Rogers was "significantly limited in his functional activities in a working environment" and recommended: no lifting or carrying occasionally over 15-20 pounds; frequently over 10 pounds; and that he should not sit, stand or walk for periods in excess of 20 minutes without changing position. Tr. at 350-51.

22. Simons had done his own work capacity assessment, in which he opined that Mr. Rogers could lift 10 to 12 pounds occasionally, stand or walk 3 to 4 hours in an 8-hour day, with 1 hour continuously; and sit for 4 to 6 hours per day, with 1 hour continuously. Tr. at 25, 215, 328. DVR's assessment, completed November 1, 1989, stated that plaintiff had the "talent and

---

[4] At one point, plaintiff apparently wanted to hold off on continuing the injections until the lawsuit was settled. Tr. at 25, 205.

ability to succeed in many lighter occupations," while acknowledging his need for frequent postural changes.  Tr. at 297.

23.   The ALJ noted inconsistencies in the medical evidence, e.g., comparing the 7% impairment rating given by Dr. Greene, a medical expert who reviewed the records, Tr. at 26, 345, with the 40% given by Dr. Simons, the chiropractor.  He rejected Dr. Simons' opinion.  Tr. at 42, 347; see Richardson v. Perales, 402 U.S. 389, 399 (1971); Casias v. Sec'y of Health & Hum. Serv., 933 F.2d 799, 801 (10th Cir. 1991) (ALJ has the ability to resolve conflicts in the medical evidence).

**Credibility Inquiry**

24.   Finally, the ALJ conducted a proper credibility inquiry which was based on substantial evidence.  He looked at plaintiff's activities during this time.  At the time he saw Dr. Thorpe in October 1993, plaintiff was working at his woodcarving business from 9:00 a.m. to 3:00 p.m. five days a week.  Tr. at 26, 29, 349.   Plaintiff, however, stated in two affidavits, dated August 1994 and June 1995, that since July 1990 he was working only 2 to 3 hours a day, 5 days a week at his wood-carving business, and that he had no sales.  Tr. at 370, 385.  See Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (ALJ may consider the claimant's activities in discounting subjective complaints).

25.   ALJ Nail noted that Mr. Rogers followed a schedule where he alternates sitting and standing for 30 minutes at a time while he does his work.  He does his own shopping and laundry.  He exercises 30 to 45 minutes daily at different stations, including kicking a ball which he states is good for his hips.  Tr. at 28.  Plaintiff lies down when uncomfortable, and after a bad day, could be in bed for a week.  Tr. at 28.

26. Despite the finding that plaintiff had a potentially pain-causing impairment, see Luna v. Bowen, 834 F.2d 161, 164 (10th Cir. 1987), the ALJ did not find the objective medical evidence inconsistent with plaintiff's ability to perform sedentary work, given the medical records and reports of both treating physicians and consultants, as well as plaintiff's daily activities. Tr. at 42; see 20 C.F.R. §§ 404.1529, 416.929 (in determining disability, the ALJ considers all the symptoms, including pain, and the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence).

27. The ALJ made a further credibility finding with respect to plaintiff's exaggeration of complaints in anticipation of the lawsuit which he eventually lost. See Diaz v. Sec'y of Health & Hum. Serv., 898 F.2d. 774, 777 (10th Cir. 1990) (ALJ is entitled to take into account incentives to appear disabled). Tr. at 42-43. He found that plaintiff's "subjective allegations of pain between 1988 and 1993 were made with the pending civil rights litigation in the Federal District Court in mind." Tr. at 43. He noted, e.g., that plaintiff did not first seek treatment with Dr. Reilly until after his lawsuit was filed, and that he sought letters from Dr. Reilly stating that his back problem could have been caused by the police conduct. Id.; Tr. at 188. ALJ Nail's examination of the record was thorough and purposeful, and I find that the noncredibility determination as to plaintiff's allegations of severe pain is based on substantial evidence.

**VE Evidence**

28. Plaintiff's major contention centers on the ALJ's use of the vocational testimony. As indicated above, two VE's gave testimony at different hearings. I find that plaintiff's issues concerning the vagueness of the hypotheticals and on the inadequacy of the ALJ's ultimate finding have no merit, for several reasons.

29. First, Ms. Miller's statement that no jobs were available which would allow a break every 15 minutes was clearly *not* applicable to sedentary jobs in general, but was a specific response to plaintiff's ability to perform *woodworking* on a full-time basis. Tr. at 513 (". . . the problem is that the type of work that we're talking about is woodworking. .. [which] require[s] individuals to stay in a one particular position"). This statement is not inconsistent with an ability to perform sedentary jobs which do allow for postural changes, as was clarified at the fourth hearing when Dr. Kreiger testified as a VE.

30. Second, the ALJ's hypothetical to Dr. Kreiger was based on the record, which Dr. Kreiger stated he reviewed "in its entirety." Tr. at 433. Plaintiff's contention that the hypothetical did not take Dr. Thorpe's functional assessment into account makes no sense unless the report was removed from the record, which plaintiff does not suggest happened. Neither does plaintiff offer any authority requiring Dr. Thorpe's functional assessment (as opposed to any other assessment that was done) to be separately emphasized or orally read into the record during Dr. Kreiger's testimony.

31. Third, plaintiff's reliance on SSR 83-12 does not point to any deficiency in the ALJ's step five analysis. The rule does state that "unskilled types of jobs are particularly structured so that a person cannot sit or stand at will." However, by the plain language of the rule, this does not mean that plaintiff's need to change positions in itself precludes sedentary work. Rather, the rule goes on to caution that "in cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." SSR 83-12. This is exactly what ALJ Nail did, thus following SSR 83-12 in spirit and letter. See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995) (no legal error exists if ALJ consults a VE).

32. Fourth, the ALJ's addition of a sit/stand option to the hypothetical tailored the question so that it adequately reflected the state of the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993); Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). Dr. Kreiger opined that there would be no sedentary work with transferable skills from his work history. Tr. at 436. However, he stated that plaintiff could do a wide range of clerical/cashier jobs which were sedentary and semi-skilled because of the skills transferable from his two years of college. Id. In addition, plaintiff could do unskilled sedentary jobs which "literally" numbered in the thousands regionally and in the millions nationally. Tr. at 436-37.

33. Dr. Kreiger then stated that the sit/stand option was available in "almost all jobs" in that category, naming a few specifically, such as parking lot attendant, ticket seller and jewelry threader. Tr. at 436-37.

34. Last, plaintiff contends that the ALJ erroneously considered information not in the record, referring to the ALJ's comment of giving plaintiff the "benefit of [his]. . . specialized experience . . . derived from hearing hundreds of disability cases." Tr. at 46. Plaintiff chooses to interpret the comment as detrimental to his position. However, I agree with defendant that the reference is for the purpose of allowing plaintiff the "benefit of the doubt" on the credibility of his need for frequent postural changes resulting from the pain he allegedly experiences. I think this is made clear from the ALJ's finding No. 8. Tr. at 46. The thrust of the comment, then, is that even using plaintiff's subjective testimony as a guide, the ultimate determination would be the same: a finding that Mr. Rogers can perform sedentary work with a sit/stand option and a conclusion that he is not disabled under the regulations.

35. In sum, I find that the ALJ's step five analysis was conducted according to the proper

legal standard and based on substantial evidence.  I also find that the ALJ's hypotheticals during vocational testimony were not improperly vague and that the ALJ did not incorrectly rely on or incorporate the responses from the hypotheticals into his disability determination.

### Recommendation

I recommend that plaintiff's Motion to Reverse the Decision of the Commissioner [10-1] be denied and that this cause of action be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE